Ryan L. Gentile, Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
Attorney for Plaintiff, Robert M. Mahan,
on behalf of himself and all others similarly situated

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------X
ROBERT M. MAHAN, on behalf of himself Civil Action No.
and all others similarly situated

 Plaintiffs, **CLASS ACTION**
 **COMPLAINT**

 v.

MONARCH RECOVERY MANAGEMENT, **NO JURY TRIAL DEMANDED**
INC.

 Defendant.
---------------------------------------------------------X

 Plaintiff, by and through his counsel, Ryan Gentile, Esq., as and for his complaint against Defendant, on behalf of himself and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated, alleges as follows:

**INTRODUCTION**

1. Robert M. Mahan ("Plaintiff"), on his own behalf and on behalf of the class he seeks to represent, brings this action to secure redress for the debt collection practices utilized by Monarch Recovery Management, Inc. ("Monarch" or "Defendant") in connection with their attempts to collect alleged debts from himself and others similarly situated.

2. Plaintiff alleges that the Defendant's collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA").

1

3. The FDCPA broadly prohibits conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements made in connection with the collection of a debt; unfair or unconscionable collection methods; and requires certain disclosures. *See* 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

4. The FDCPA is generally characterized as a "strict liability" statute because "it imposes liability without proof of an intentional violation." <u>Glover v. FDIC</u>, 698 F.3d 139 (3d. Cir. 2012) (citing <u>Allen ex rel. Martin v. LaSalle Bank, N.A.</u>, 629 F.3d 364, 368 & n. 7 (3d Cir. 2011).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's FDCPA claims pursuant to 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

6. Venue and personal jurisdiction in this District are proper because:
   i. The acts giving rise to this lawsuit occurred within this District; and
   ii. Defendant does business within this District.

## PARTIES

7. Plaintiff, Robert M. Mahan, is an individual natural person who at all relevant times resided in the City of Clifton, County of Passaic, State of New Jersey.

8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

9. Monarch Recovery Management, Inc. is a corporation with its principal place of business located at 3260 Tillman Drive, Suite 75 Bensalem, PA 19020.

10. The principal purpose of Monarch is the collection of debts using the mail and telephone.

11. Monarch regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. Monarch's business records on file with the State of New Jersey state that Monarch provides collection agency services.

13. Monarch's website states "Monarch Recovery Management, Inc. is a premier accounts receivable management company…"(http://monarchrm.com/about-us/)(Last Visited October 9, 2019)

14. Monarch is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

**FACTS**

15. Sometime prior to May 2019, Plaintiff allegedly incurred a financial obligation to Barclays Bank Delaware ("Barclays") related to a personal credit card account in the Plaintiff's name (the "Debt"). The Debt was given an account number by Barclays and the last four numbers of that account were 8962.

16. The Debt arose out of a transaction in which the money, property, insurance or services which were the subject of the transaction were primarily for personal, family or household purposes, namely fees emanating from a personal credit card account in Plaintiff's name that was issued by Barclays.

17. The Debt arose out of a credit card account which Plaintiff opened for his personal use.

18. Plaintiff's credit card account that was issued by Barclays was neither opened nor used by Plaintiff for business purposes.

19. Plaintiff's personal credit card Debt to Barclays is a "debt" as defined by 15 U.S.C. §1692a(5).

20. Sometime after the incurrence of the Debt, but before the initiation of this action, Plaintiff was alleged to have fallen behind on payments owed on the Debt.

21. Sometime after the Debt went into default, it was allegedly sold to First Portfolio Ventures I, LLC.

22. On or before June 19, 2019, the Debt was referred by First Portfolio Ventures I, LLC to Monarch for the purpose of collections.

23. The Debt was never assigned to Monarch.

24. Neither Barclays nor First Portfolio Ventures I, LLC ever transferred, sold or assigned any of their interest or rights with regard to the Debt to Monarch.

25. No privity of contract exists between Defendant and Plaintiff such that Defendant has standing to sue Plaintiff for non-performance of any legal obligation of the Plaintiff arising from or with regard to the Debt.

26. Defendant is merely a third-party debt collector with no legal interest or right in the Debt.

27. Defendant contends that the Debt is past-due and in default.

28. At the time the Debt was referred by First Portfolio Ventures I, LLC to Monarch, the Debt was past-due.

29. At the time the Debt was referred by First Portfolio Ventures I, LLC to Monarch, the Debt was in default.

30. At all times relevant hereto, Defendant acted in an attempt to collect the Debt.

31. On or about June 19, 2019, Monarch mailed or caused to be mailed a letter (the "First Letter") to Plaintiff. (Annexed and attached hereto as <u>Exhibit A</u> is a true copy of the First Letter dated June 19, 2019 sent by Monarch to Plaintiff, except the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Plaintiff's street address to protect his privacy).

32. Monarch mailed the First Letter dated June 19, 2019 attached as <u>Exhibit A</u> as a part of their efforts to collect the Debt.

33. Plaintiff received the First Letter attached as <u>Exhibit A</u> in the mail.

34. Plaintiff read the First Letter attached as <u>Exhibit A</u> upon receipt of it in the mail.

35. <u>Exhibit A</u> was sent in connection with the collection of the Debt.

36. <u>Exhibit A</u> seeks to collect the Debt.

37. <u>Exhibit A</u> states in relevant part, "This is an attempt by a debt collector to collect a debt."

38. <u>Exhibit A</u> conveyed information regarding the Debt including a balance due, Monarch file number, and a demand for payment.

39. The First Letter attached as <u>Exhibit A</u> is a "communication" as that term is defined by 15 U.S.C. §1692a(2).

40. The First Letter attached as <u>Exhibit A</u> was the first letter or notice that Monarch sent to Plaintiff.

41. The First Letter attached as <u>Exhibit A</u> was the initial "communication" as that term is defined by 15 U.S.C. § 1692a(2) from Monarch to the Plaintiff.

42. The First Letter contains the debt validation notice that 15 U.S.C. § 1692g requires to be included with an initial written communication to a consumer, namely notices advising Plaintiff that he had 30 days to dispute the Debt, obtain verification of the Debt through a written dispute, and obtain the name and address of the original creditor through a written request.

43. On or about July 16, 2019, Monarch mailed or caused to be mailed a letter (the "Second Letter") to Plaintiff. (Annexed and attached hereto as <u>Exhibit B</u> is a true copy of the Second Letter dated July 16, 2019 sent by Monarch to Plaintiff, except the undersigned

counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Plaintiff's street address to protect his privacy).

44. Monarch mailed the Second Letter dated July 16, 2019 attached as <u>Exhibit B</u> as a part of their efforts to collect the Debt.

45. Plaintiff received the Second Letter attached as <u>Exhibit B</u> in the mail.

46. Plaintiff read the Second Letter attached as <u>Exhibit B</u> upon receipt of it in the mail.

47. <u>Exhibit B</u> was sent in connection with the collection of the Debt.

48. <u>Exhibit B</u> seeks to collect the same Debt as <u>Exhibit A</u>.

49. <u>Exhibit B</u> states in relevant part, "This is an attempt by a debt collector to collect a debt."

50. <u>Exhibit B</u> conveyed information regarding the Debt including a balance due, Monarch file number, and a demand for payment.

51. The Second Letter attached as <u>Exhibit B</u> is a "communication" as that term is defined by 15 U.S.C. §1692a(2).

52. The Second Letter contains the same debt validation notice that the First Letter contained.

53. The Second Letter was dated July 16, 2019, which date was within the thirty-day validation period referenced in the First Letter.

54. The Second Letter was received by Plaintiff within the thirty-day validation period referenced in the First Letter.

55. The Second Letter was mailed by Monarch to Plaintiff so that by Plaintiff would receive it the thirty-day validation period referenced in the First Letter.

56. Plaintiff was confused by <u>Exhibits A and B</u>, and upon receiving <u>Exhibit B</u>, was unsure whether he still had 30 days to dispute the Debt from the date he received the First Letter.

57. Upon information and belief, the First Letter attached as Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

58. Upon information and belief, the First Letter attached as Exhibit A is a form debt collection letter used by Monarch to attempt to collect the alleged Debt.

59. Upon information and belief, the Second Letter attached as Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

60. Upon information and belief, the Second Letter attached as Exhibit B is a form debt collection letter used by Monarch to attempt to collect the alleged Debt.

61. Upon information and belief, the letters attached as Exhibit A and Exhibit B are mass-produced, computer generated form letters that are prepared by Monarch and mailed to consumers in the State of New Jersey, such as Plaintiff, from whom they are attempting to collect a debt.

62. Defendant used the same procedures they used in sending the letters attached as Exhibit A and Exhibit B when sending the same and/or similar letters to other New Jersey consumers.

**CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

63. Plaintiff incorporates by reference all the above paragraphs as though fully stated herein.

64. The Defendant's above refenced conduct violates 15 U.S.C. §§1692, 1692e, 1692e(10), 1692g, and 1692g(b).

65. 15 U.S.C. §1692e provides:

    **§1692e.        False or Misleading Representations**

    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

    >    (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer

66. 15 U.S.C. §1692g provides:

    **§1692g Validation of Debts**

    **(b) Disputed debts**

    If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

67. Whether or not a consumer requests verification of a debt, a debt collector's collection activities and communications during the 30-day validation period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. 15 U.S.C. § 1692g(b).

68. Defendant violated §1692g(b) because the Second Letter overshadowed the validation notice contained in the First Letter. The unsophisticated consumer would be confused by Exhibits A and B, and upon receiving Exhibit B, within the thirty day validation period

8

referenced in Exhibit A, would be unsure whether they still had 30 days to dispute their debt and would reasonably, but mistakenly, believe that they had a greater period of time to dispute their debt than they actually had.

69. The FDCPA only provides a consumer the right to verification of their debt and to the name and address of their original creditor within thirty days of that consumer's receipt of the *initial* debt collection communication. 15 U.S.C. § 1692g(b). If an alleged debtor disputes their debt within 30 days of receiving the validation notice in the initial debt collection communication, the debt collector is required to cease debt collection efforts until it has provided verification of the debt or a copy of the judgment against the debtor. 15 U.S.C. § 1692g(b). Under the plain language of 15 U.S.C. § 1692g, a debt collector is not required to verify a debt unless the debtor disputes the debt within 30 days of receipt of the *initial* debt collection notice.

70. Monarch mailed or caused to be mailed the Second Letter to Plaintiff so that it was received by Plaintiff within the 30-day validation notice period that commenced upon Plaintiff's receipt of the First Letter. Thus, the Second Letter tells the Plaintiff that the validation notice period is extended until 30 days after his receipt of the Second Letter, which is actually false. 15 U.S.C. § 1692g(b).

71. Validation rights are statutory. A debt collector is not required to verify a debt that is disputed after the 30-day validation period, 15 U.S.C. § 1692g(a)(4). Furthermore, the prohibition on further collection activities pending verification of a disputed debt does not apply to debts that are disputed after the 30-day period, whether or not the consumer has raised the dispute within 30 days of receiving a subsequent validation notice. 15 U.S.C. § 1692g(b); see Paige v. Waukesha Health Sys., 2013 U.S. Dist. LEXIS 96962, at

\* 23-24 n.3 (E.D. Wis. July 11, 2013) (observing that sending a second validation notice during the validation period would implicate 15 U.S.C. § 1692g(b)).

72. Monarch's conduct of sending a Second Letter containing the same validation notice as the First Letter, *within the thirty-day validation period referenced in the First Letter*, has previously been held to violate the FDCPA. *See* Maloney v. Alliance Collection Agencies, Inc., 2018 WL 5816375, at \*3 (E.D. Wis. Nov. 6, 2018)("The first notice says that the debt collector will validate the debt if disputed within 30 days. The second notice, sent within 30 days of the first, says the same. Thus, when receiving the second notice, an unsophisticated consumer might be confused as to how much time remains to dispute the debt.")

73. The Second Letter attached as Exhibit B is false, deceptive, and misleading in violation of § 1692e and § 1692e(10) because it contains statements that would mislead the unsophisticated consumer into believing that the validation period begins to run with their receipt of Exhibit B rather than Exhibit A.

74. The misleading and deceptive representation is material because the Second Letter could well steer a consumer to put off disputing the debt until after the window in which Monarch is statutorily required to cease collection activities and validate the debt. Thus, the confusion is material. *See* Maloney., 2018 WL 5816375, at \*4.

75. Plaintiff has alleged a particularized injury because the First Letter and Second Letter were mailed and directed to him.

76. Plaintiff has alleged a concrete harm because the FDCPA creates a substantive right under §1692e to be free from abusive debt communications and §1692g creates a

substantive right to receive certain information, and Defendant's violations of those sections of the the FDCPA results in concrete harm to Plaintiff.

77. Be reason thereof, Defendant is liable to Plaintiff and the proposed class for judgment that the Defendant's conduct violated 15 U.S.C. §1692e and 15 U.S.C. §1692g and for statutory damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1692k.

## CLASS ALLEGATIONS

78. Plaintiff incorporates by reference all the above paragraphs as though fully stated herein.
79. This action is brought as a class action. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.
80. The class is initially defined as: (a) all individuals (b) with a New Jersey address (c) who were sent a series of collection letters in the form represented by Exhibits A and B to the complaint, (d) where the letters were sent within 30 days of each another, (e) where the letters were not returned as undeliverable; and (f) where the second letter is dated one year prior to the filing of this action and on or before a date 20 days after the filing of this action.
81. The class definition above may be subsequently modified or refined.
82. The proposed class specifically excludes the United States of America, the states of the Third Circuit, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Third Circuit and the United States Supreme Court.

83. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

   i. **Numerosity**: Plaintiff is informed and believes and on that basis alleges that the class defined above is so numerous that joinder of all members would be impracticable. Defendant's conduct involves the sending of a form collection letter. Upon information and belief, there are at least 40 members of the class. The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendant.

   ii. **Common Questions Predominate**: There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) The existence of the Defendant's identical conduct particular to the matter at issue; (b) Defendant's violations of the FDCPA, specifically 15 U.S.C. §1692e and 15 U.S.C. §1692g; (c) The availability of statutory penalties; and (d) Attorney's fees and costs.

   iii. **Typicality**: Plaintiff's claims are typical of those of the class they seek to represent. Plaintiff's claims and those of each class member originate from the same conduct, practice, and procedure, on the part of Defendant. Thus, if brought and prosecuted individually, the claims of each class member would

require proof of the same material and substantive facts. Plaintiff possesses the same interests and has suffered the same injuries as each class member. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

iv. **Adequacy**: Plaintiff will fairly and adequately protect the interests of each class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of each class. Plaintiff is willing and prepared to serve this Court and the proposed class. The interests of the Plaintiff are co-extensive with and not antagonistic to those of the absent class members. Plaintiff has retained the services of counsel who are experienced in FDCPA class action litigation and will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members. Neither the Plaintiff nor their counsel have any interests which might cause them to not vigorously pursue the instant class action lawsuit.

v. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Furthermore, a class action is superior for the fair and efficient adjudication of this matter because individual actions are not economically feasible, members of the class are likely to be unaware of their rights or that they

were violated, and Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**WHEREFORE**, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

1. An order certifying that Count I may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the class as previously set forth and defined above;

2. Adjudging that Defendant violated 15 U.S.C. §§1692e and 1692g;

3. An award of statutory damages for Plaintiff, and the class pursuant to 15 U.S.C. §1692k;

4. Attorneys' fees, litigation expenses, and costs of suit pursuant to 15 U.S.C. §1692k; and

5. Such other and further relief as the Court deems proper.

Dated: Floral Park, New York
October 9, 2019

By:    /s/ Ryan Gentile
    _____
    Ryan Gentile, Esq.
    Law Offices of Gus Michael Farinella PC
    *Attorney for Plaintiff*
    110 Jericho Turnpike – Suite 100
    Floral Park, NY 11001
    Tel: (201) 873-7675
    rlg@lawgmf.com